**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION**

| | | |
|---|---|---|
| BREEZE AVIATION GROUP, INC. d/b/a Breeze Airways | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:26-cv-01210-BHH |
| v. | ) ) ) | **COMPLAINT AND JURY DEMAND** |
| ALL NIPPON AIRWAYS CO., LTD | ) ) | |
| Defendant(s). | ) | |

The Plaintiff, Breeze Aviation Group, Inc., d/b/a Breeze Airways ("Breeze") complaining of Defendant, All Nippon Airways Co., Ltd. ("ANA") alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Breeze is a Delaware Corporation with its principal place of business in Cottonwood Heights, Utah.

2.    Breeze is an airline that operates throughout the United States, and in particular, out of Charleston International Airport in Charleston, South Carolina ("CHS"). Breeze also operates out of Greenville/Spartanburg, South Carolina, and Myrtle Beach, South Carolina.

3.    Defendant ANA is a Japanese joint-stock company or corporation with its principal place of business in Tokyo, Japan.

4.    ANA is an international airline that operates from airports throughout the United States and internationally.

5. ANA operates domestically at 21250 Hawthorne Blvd., Ste. 200, Torrance, CA 90503.

6. On July 18, 2025, ANA was present in the State of South Carolina through its operation of its Boeing 787 aircraft, Registration No. JA986A on a ferry flight no. NH9397 to Los Angeles International Airport ("LAX"), prior to continuing to Haneda Airport, Ota, Tokyo Japan ("HND").

7. During ANA's presence in South Carolina, its agents operating a certain ANA aircraft committed a tortious act, as more fully set forth herein, when ANA caused its aircraft to strike the tail rudder of Breeze's aircraft.

8. As a result of the tortious act committed by ANA, Breeze suffered damages, as more fully set forth herein, in excess of $6,500,000.00.

9. Pursuant to 28 U.S.C. § 1332 (a), the Court has jurisdiction over this action as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

10. Under 28 U.S.C. §1391, venue is proper in this Court as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## **FACTS**

11. On and prior to July 18, 2025, Breeze owned and operated a certain Airbus A220, Registration No. N247BZ ("N247BZ" or "Breeze's Aircraft").

12. On July 18, 2025, ANA was operating a Boeing 787 aircraft bearing Registration No. JA986A ("JA986A" or "ANA's Aircraft") at CHS in connection with a delivery ferry flight from CHS to LAX, prior to continuing to HND.

13. On July 18, 2025, Breeze was operating N247BZ as Breeze Flight MX509 from Las Vegas, Nevada ("LAS") to Norfolk, Virginia ("ORF").

14. Due to weather conditions, Breeze Flight MX509 diverted to CHS.

15. The Breeze Aircraft landed at CHS at approximately 21:30.

16. The flight crew of Breeze's Aircraft were directed to the CHS's RON pad for refueling.

17. The Breeze Aircraft flight crew did as instructed, and once the Breeze Aircraft arrived at the RON pad, it was marshalled into spot R6 ("R6").

18. The Breeze Aircraft was parked and stationary at R6 at approximately 21:36.

19. Passengers remained on board during taxi to R6.

20. Several minutes after the Breeze Aircraft was parked and stationary, ANA's Aircraft began taxiing on CHS taxiway M.

21. Taxiway M runs adjacent to R6 and is uncontrolled.

22. Because Taxiway M was, and upon information and belief, still is uncontrolled, the ANA flight crew was obligated to maintain its own safety, separation, and navigation, declaring its intentions through use of a Common Traffic Advisory Frequency ("CTAF").

23. R6 is visible from Taxiway M.

24. The Breeze Aircraft, including its tail rudder, was visible to the ANA Aircraft from its position.

25. At the time, JA986A was occupied by two ANA crew members and three employees of ANA assisting in the ferry operations.

26. While Breeze's Aircraft was parked and completely stationary, and while ANA's Aircraft was taxiing on Taxiway M, the wing of ANA's Aircraft collided with vertical stabilizer assembly of the Breeze's Aircraft, slicing through it and causing damage to Breeze's Aircraft's vertical stabilizer, rudder, and rear cone.

27. Upon information and belief, ANA's collision with Breeze's Aircraft caused physical injuries to certain passengers on Breeze Flight MX509.

28. The force of the collision caused fluids to discharge from the tail of the Breeze Aircraft, prompting an extensive Aircraft Rescue and Firefighting ("ARFF") and airport emergency response and necessitating the immediate and complete deplaning of all passengers and flight crew from Breeze Flight MX509.

**FOR A FIRST CAUSE OF ACTION**
**(Negligence – ANA)**

29. Breeze incorporates its allegations of Paragraphs 1 through 26 as though fully set forth herein for Paragraph 27.

30. At all relevant times, ANA and/or its agents and employees had a duty to exercise reasonable care in the operation of ANA's Aircraft to avoid causing harm to others.

31. In particular, ANA had a duty to:

    a. Maintain situational awareness and lookout while taxiing ANA's Aircraft;

    b. Ensure adequate wingtip and tail clearance from Breeze's parked and stationary Aircraft;

c.  Maintain positive control of ANA's Aircraft during ground movement operations in close proximity to parked aircraft;

d.  Properly account for the size and wingspan of ANA's Aircraft while operating at CHS;

e.  Announce its position and intentions before entering taxiway M;

f.  Maintain two-way radio communication on the Common Traffic Advisory Frequency (CTAF) or UNICOM;

g.  Slow, stop, or otherwise reduce the speed of ANA's Aircraft when clearance from Breeze's parked Aircraft was insufficient or uncertain;

h.  Utilize appropriate crew coordination, monitoring, and cross-checking during taxi operations to ensure safe ground movement;

i.  Proceed with taxi operations despite the foreseeable risk of ground collision with a parked aircraft in close proximity;

j.  Take reasonable precautions to avoid contact with a parked and occupied aircraft during ground operations; and

k.  Adhere to the rules and regulations promulgated by the Federal Aviation Administration, including but not limited to sections 14 C.F.R. 91.13, 14 C.F.R. 91.111, and 14 C.F.R. 91.113.

32.  ANA, by and through its agents and/or employees, breached its aforementioned duty by committing one or more of the following negligent acts and/or omissions:

a.  Failing to maintain proper situational awareness and lookout while taxiing ANA's Aircraft;

b.  Failing to ensure adequate wingtip and tail clearance from Breeze's parked and stationary Aircraft;

c.  Failing to maintain positive control of ANA's Aircraft during ground movement operations in close proximity to parked aircraft;

d.  Failing to properly account for the size and wingspan of ANA's Aircraft while operating at CHS;

e.    Failing to announce its position and intentions before entering taxiway M;

f.    Failing to maintain two-way radio communication on the Common Traffic Advisory Frequency (CTAF) or UNICOM;

g.    Failing to slow, stop, or otherwise reduce the speed of ANA's Aircraft when clearance from Breeze's parked Aircraft was insufficient or uncertain;

h.    Failing to utilize appropriate crew coordination, monitoring, and cross-checking during taxi operations to ensure safe ground movement;

i.    Proceeding with taxi operations despite the foreseeable risk of ground collision with a parked aircraft in close proximity;

j.    Failing to take reasonable precautions to avoid contact with a parked and occupied aircraft during ground operations;

k.    Failed to adhere to the rules and regulations promulgated by the Federal Aviation Administration, including but not limited to sections 14 C.F.R. 91.13, 14 C.F.R. 91.111, and 14 C.F.R. 91.113; and

l.    Was otherwise careless or negligent.

33.    The foregoing events previously occurred as a direct and proximate result of one or more of the negligent acts and/or omissions of ANA.

34.    As a direct and proximate result of ANA's negligent acts and/or omissions, Breeze sustained substantial monetary damages in excess of $6,500,000.00, including but not limited to: (a) physical damage to Breeze's aircraft, which required extensive repairs before it could be returned to an airworthy condition; (b) disruption of Breeze's business operations while Breeze's Aircraft remained grounded, resulting in lost profits; (c) the incurrence of direct and indirect operational expenses; and (d) costs, losses, and expenses associated with the defense

and indemnification of third-party passenger claims asserted against Breeze arising out of ANA's negligence.

WHEREFORE, having fully set forth its Complaint against Defendant All Nippon Airways Co., Ltd., Plaintiff Breeze Aviation Group, Inc. d/b/a Breeze Airways prays for the following relief:

1.    For a jury trial on all issues triable thereto;

2.    For a judgment against ANA in an amount to be determined at trial, plus prejudgment interest;

3.    For the costs of this action; and

4.    For such other and further relief as the Court shall deem just and proper.

CLEMENT RIVERS, LLP


By: */s/Duke R. Highfield*
Duke R. Highfield, FedID#5654
Victoria L. Anderson, FedID#11708
P.O. Box 993
Charleston, SC  29401
(843) 720-5456
dhighfield@ycrlaw.com
tanderson@ycrlaw.com
Attorneys for Plaintiff

Dated: 3/20/2026