IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| BREEZE AVIATION GROUP, INC. d/b/a Breeze Airways, | ) ) ) | Civil Action No. 2:26-cv-01210-BHH |
| Plaintiff-Counterdefendant, | ) ) | **ALL NIPPON AIRWAYS CO., LTD.'S ANSWER, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT** |
| -against- | ) ) | |
| ALL NIPPON AIRWAYS CO., LTD, | ) ) | |
| Defendant-Counterclaimant. | ) ) ) | |
| ALL NIPPON AIRWAYS CO., LTD, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| -against- | ) ) ) | |
| UNIFI AVIATION, LLC., and CHARLESTON REGIONAL AIRPORT AUTHORITY | ) ) ) ) | |
| Third-Party Defendants. | ) | |

Defendant-Counterclaimant ALL NIPPON AIRWAYS CO., LTD. (hereinafter "ANA"), by and through its attorneys, Condon & Forsyth LLP and Deborah B. Barbier, LLC, as and for its Answer and Counterclaims to the Plaintiff-Counterdefendant's Complaint, states upon information and belief as follows:

**AS TO PARTIES, JURISDICTION, AND VENUE**

1. Defendant-Counterclaimant ANA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint.

2. Defendant-Counterclaimant ANA denies knowledge or information sufficient to

1

form a belief as to the truth of the allegations in paragraph 2 of the Complaint.

3.     Defendant-Counterclaimant ANA denies the allegations in paragraph 3 of the Complaint, except admits that ANA is a corporation with its principal place of business in Tokyo, Japan.

4.     Defendant-Counterclaimant ANA denies the allegations in paragraph 4 of the Complaint, except admits that ANA is a foreign air carrier that operates flights to and from certain airports in the United States and abroad.

5.     Defendant-Counterclaimant ANA denies the allegations in paragraph 5 of the Complaint, except admits that ANA has an office at 21250 Hawthorne Blvd., Ste. 200, Torrance, CA 90503.

6.     Defendant-Counterclaimant ANA denies the allegations in paragraph 6 of the Complaint, except admits that on July 18, 2025, ANA employees operated a Boeing 787 aircraft bearing registration number JA986A at Charleston International Airport ("CHS") with the intention to depart as ferry flight NH 9397 en route to Los Angeles.

7.     Defendant-Counterclaimant ANA denies the allegations in paragraph 7 of the Complaint.

8.     Defendant-Counterclaimant ANA denies the allegations in paragraph 8 of the Complaint.

9.     Defendant-Counterclaimant ANA admits the allegations in paragraph 9 of the Complaint.

10.     Defendant-Counterclaimant ANA admits the allegations in paragraph 10 of the Complaint.

## AS TO FACTS

11.     Defendant-Counterclaimant ANA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint, except admits that Plaintiff-Counterdefendant Breeze Airways Group, Inc. ("Breeze Airways") operated an Airbus A220 bearing Registration Number N247BZ on July 18, 2025.

12.     Defendant-Counterclaimant ANA denies the allegations in paragraph 12 of the Complaint, except admits that on July 18, 2025, ANA's aircraft, a Boeing 787-10 aircraft bearing registration number JA986A, was taxiing at CHS with the intention of departing as ferry flight NH 9397 en route to Los Angeles.

13.     Defendant-Counterclaimant ANA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint.

14.     Defendant-Counterclaimant ANA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint.

15.     Defendant-Counterclaimant ANA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint.

16.     Defendant-Counterclaimant ANA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint.

17.     Defendant-Counterclaimant ANA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint.

18.     Defendant-Counterclaimant ANA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint.

19.     Defendant-Counterclaimant ANA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint.

3

20. Defendant-Counterclaimant ANA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint.

21. Defendant-Counterclaimant ANA denies the allegations in paragraph 21 of the Complaint.

22. Defendant-Counterclaimant ANA denies the allegations in paragraph 22 of the Complaint.

23. Defendant-Counterclaimant ANA denies the allegations in paragraph 23 of the Complaint.

24. Defendant-Counterclaimant ANA denies the allegations in paragraph 24 of the Complaint.

25. Defendant-Counterclaimant ANA denies the allegations in paragraph 25 of the Complaint.

26. Defendant-Counterclaimant ANA denies the allegations in paragraph 26 of the Complaint.

27. Defendant-Counterclaimant ANA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint.

28. Defendant-Counterclaimant ANA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint.

<u>**AS TO THE FIRST CAUSE OF ACTION**</u>

**(Negligence – ANA)**

29. Answering paragraph 29 of the Complaint, Defendant-Counterclaimant ANA repeats, reiterates and re-alleges each and every admission and denial in paragraphs 1 through 28 of the Answer with the same force and effect as if herein set forth in full.

4

30.    Defendant-Counterclaimant ANA denies the allegations in paragraph 30 of the Complaint.

31.    Defendant-Counterclaimant ANA denies the allegations in paragraph 31 of the Complaint, inclusive of sub-parts a through k.

32.    Defendant-Counterclaimant ANA denies the allegations in paragraph 32 of the Complaint, inclusive of sub-parts a through l.

33.    Defendant-Counterclaimant ANA denies the allegations in paragraph 33 of the Complaint.

34.    Defendant-Counterclaimant ANA denies the allegations in paragraph 34 of the Complaint.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

All or part of the damages allegedly sustained by Plaintiff-Counterdefendant were caused in whole or in part by the negligence or other wrongful act or omission of Plaintiff-Counterdefendant and/or its agents.  Accordingly, Plaintiff-Counterdefendant's damages, if any, should be diminished in accordance with the degree of culpability and fault attributed to Plaintiff-Counterdefendant or its agents.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff-Counterdefendant's damages, if any, were caused and brought about by an intervening and superseding cause and were not caused by Defendant-Counterclaimant or by any

person for whom Defendant-Counterclaimant is responsible. Accordingly, Defendant-Counterclaimant is not liable to Plaintiff-Counterdefendant.

## FOURTH AFFIRMATIVE DEFENSE

Any and all damages allegedly sustained by Plaintiff-Counterdefendant were not proximately caused by any negligence or culpable conduct on the part of Defendant-Counterclaimant.

## FIFTH AFFIRMATIVE DEFENSE

Any damages awarded to Plaintiff must be reduced by the amount of any collateral sources received by Plaintiff including, but not limited to, insurance payments.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff failed to mitigate its damages, if any, and, therefore, Plaintiff is barred from recovering any such damage against Defendant-Counterclaimant.

## SEVENTH AFFIRMATIVE DEFENSE

At all times relevant to this litigation, Defendant-Counterclaimant complied with all applicable laws, regulations, and standards.

## EIGHTH AFFIRMATIVE DEFENSE

Defendant-Counterclaimant alleges that any damages or injuries claimed by Plaintiff were caused, in whole or in part, by the negligence or fault of third parties over whom Defendant-Counterclaimant had no control, including but not limited to Unifi Aviation, LLC; Charleston Regional Aviation Authority; CHS airport personnel; air traffic control; or other responsible entities.

WHEREFORE, Defendant-Counterclaimant ALL NIPPON AIRWAYS CO., LTD.

demands judgment dismissing the Complaint in its entirety or, alternatively, judgment limiting its liability as aforementioned, together with costs, disbursements and such other and further relief as this Court deems just and proper.

## AS AND FOR DEFENDANT-COUNTERCLAIMANT ALL NIPPON AIRWAYS CO., LTD.'S COUNTERCLAIMS AGAINST PLAINTIFF-COUNTERDEFENDANT BREEZE AVIATION GROUP, INC.

1.    Defendant-Counterplaintiff All Nippon Airways Co., Ltd. ("ANA"), is a corporation organized under the laws of Japan.  ANA's principal place of business is located in Tokyo, Japan.

2.    Upon information and belief, Plaintiff-Counterdefendant Breeze Aviation Group, Inc. ("Breeze Airways"), is a corporation organized and existing under the laws of Delaware with a principal place of business in Cottonwood Heights, Utah.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over ANA's counterclaims under 28 U.S.C. § 1367(a) because they are so related to Plaintiff's claims that they form a part of the same case or controversy.

4.    Alternatively, this Court has jurisdiction over ANA's counterclaims pursuant to 28 U.S.C. § 1332(a)(2), in that this is a civil action between a citizen of a foreign state and citizens of a State, and the amount in controversy exceeds $75,000, exclusive of interest and costs. ANA is a corporation organized under the laws of Japan, and Breeze Airways is a citizen of the United States.

5.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district. The incident giving

rise to this action occurred at Charleston International Airport, located in North Charleston, South Carolina, within the District of South Carolina.

**STATEMENT OF FACTS**

6.     On July 18, 2025, an aircraft owned and/or operated by Breeze Airways, an Airbus A220-300 bearing registration number N247BZ ("the Breeze Aircraft"), was operating as flight MX 509 and landed at Charleston International Airport ("CHS").

7.     Unifi Aviation, LLC ("Unifi"), is Breeze's ground handler and agent at CHS.

8.     After the Breeze Aircraft landed, Breeze Airways asked Charleston Regional Airport Authority ("CRAA") for permission for the Breeze Aircraft to park on the Remain Over Night ("RON") ramp at CHS to refuel in anticipation of departing shortly thereafter.

9.     CRAA instructed Breeze Airways and Unifi to utilize RON Spot R1.

10.     RON Spot R1 is designated for A220-300 aircraft and is configured to accommodate an A220-300 aircraft.

11.     Aircraft that park in RON Spot R1 must back into the spot, tail section-first.

12.     However, Unifi employees and/or Breeze employees marshalled the Breeze Aircraft, nose-in, to RON Spot R6.

13.     RON Spot R6 is not designated for A220-300 aircraft and it is not configured to accommodate an A220-300 aircraft.

14.     RON Spot R6 is designated only for, and configured only to accommodate, Embraer aircraft types E45, E70, E90, and E95, and Bombardier aircraft types CRJ-200, CRJ-500, CRJ-700, and CRJ-900.

15.     When marshalling the Breeze Aircraft to RON Spot R6, Unifi stopped the Breeze Aircraft short of the R6 stop line.

16.     The Breeze Aircraft then parked at the location in which it stopped.

17.     Because the Breeze Aircraft was positioned in a space neither designated for nor configured to accommodate an A220-300 aircraft, the tail section of the Breeze Aircraft encroached into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

18.     Because the Breeze Aircraft was positioned short of the R6 stop line, it further enroached into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

19.     Unifi employees were aware that RON Spot R6 was not designated for A220-300 aircraft and was not configured for A220-300 aircraft.

20.     The flight crew of the Breeze Aircraft were aware that RON Spot R6 was not designated for A220-300 aircraft and was not configured for A220-300 aircraft.

21.     Both Unifi and the flight crew of the Breeze Aircraft were aware that Taxiway M was being actively used by other aircraft.

22.     Neither Unifi nor the flight crew of the Breeze Aircraft notified flight crews of other aircraft or Air Traffic Control that the Breeze Aircraft was encroaching into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

23.     On July 18, 2025, ANA's aircraft, a Boeing 787-10 aircraft bearing registration number JA986A ("the ANA Aircraft"), was taxiing from the Boeing Delivery Center at Charleston International Airport to depart as ferry flight NH 9397 en route to Los Angeles.

24.     At approximately 9:40 pm on July 18, 2025, the ANA Aircraft was taxiing on Taxiway M.

9

25. The flight crew of the ANA Aircraft were taxiing on Taxiway M pursuant to instructions issued by Air Traffic Control.

26. Taxiway M is designed to accommodate aircraft with a wingspan equal to or greater than that of the ANA Aircraft.

27. When aircraft with wingspans equal to or greater than that of the ANA aircraft taxi on Taxiway M, their wings will not make contact with aircraft that are properly positioned in RON Spots for which such aircraft are designated.

28. While taxiing on Taxiway M, the ANA aircraft's left wing made contact with the tail section of the Breeze Aircraft.

29. At the time of the collision, the Breeze Aircraft was positioned in the wrong RON Spot.

30. At the time of the collision, the tail section of the Breeze Aircraft was extending into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

31. The collision was proximately caused by the Breeze Aircraft being positioned in the wrong RON Spot and the Breeze Aircraft being positioned incorrectly into the wrong RON Spot, which caused the tail of the Breeze Aircraft extending into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

32. The collision caused significant damage to the left wingtip, upper and lower winglet skin panels, and adjacent and surrounding structure of the ANA Aircraft.

33. The ANA Aircraft underwent required temporary repairs at CHS to enable a ferry flight to Victorville, California, where it would undergo permanent repairs.

34.     The temporary repairs included removal of the damaged outboard wingtip, removal of the undamaged wingtip for flight symmetry, and securing of the wings for the ferry flight.

35.     The ANA Aircraft underwent permanent repairs, including replacement of the damaged wingtip and reinstallation of the undamaged wingtip.

36.     The total cost of the temporary and permanent repairs was approximately $2,530,000.

37.     ANA also sustained damages associated with the unanticipated need to reposition the ANA Aircraft, at a net cost to be determined at a later date.

38.     Passengers on board the Breeze Aircraft have asserted claims for damages against ANA and Breeze Airways.

**FIRST COUNTERCLAIM**

**(Negligence – Breeze Airways)**

39.     ANA realleges, reasserts, and repleads the allegations in paragraphs 1 through 38 above as if fully set forth herein.

40.     Breeze Airways and its agent, Unifi, owed Defendant-Counterclaimant a duty to exercise reasonable care in the parking, marshalling, and ground handling of aircraft at Charleston International Airport, including a duty to ensure that aircraft under their control were positioned safely and correctly, in accordance with airport designations, and did not create hazards to other aircraft operating on taxiways.

41.     Breeze Airways' duty arises from (1) its role as an aircraft operator responsible for the safe positioning of aircraft on the ramp and taxiways at the airport; and (2) Unifi's role as Breeze Airways' agent and contract ground handler.

42.    Breeze Airways, by and through its agents and/or employees, breached its duty by failing to position the Breeze Aircraft in RON Spot R1, the position it was assigned by CRAA.

43.    Breeze Airways, by and through its agents and/or employees, breached its duty by improperly positioning the Breeze Aircraft in RON Spot R6, which was not designated or configured for an A220-300 aircraft.

44.    Breeze Airways, by and through its agents and/or employees, breached its duty by stopping the Breeze Aircraft short of the designated R6 stop line.

45.    Breeze Airways, by and through its agents and/or employees, breached its duty by failing to timely move the Breeze Aircraft or otherwise prevent the hazard.

46.    Breeze Airways, by and through its agents and/or employees, breached its duty by failing to inform CRAA, ANA, or Air Traffic Control that the Breeze Aircraft was positioned in the wrong RON Spot, and was positioned incorrectly in that spot.

47.    Breeze Airways, by and through its agents and/or employees, was otherwise careless or negligent in allowing the tail section to encroach into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

48.    Unifi, acting as Breeze Airways' contract ground handler and agent, failed to position the Breeze Aircraft in RON Spot R1, the position it was assigned by CRAA.

49.    Unifi, acting as Breeze Airways' contract ground handler and agent, improperly positioned the Breeze Aircraft in RON Spot R6, which was not designated or configured for an A220-300 aircraft.

50.    Unifi, acting as Breeze Air's contract ground handler and agent, improperly stopped the Breeze Aircraft short of the designated R6 stop line.

51.     Unifi, acting as Breeze Air's contract ground handler and agent, failed to ensure the Breeze Aircraft was positioned in a safe and proper location.

52.     Unifi, acting as Breeze Airways's contract ground handler and agent, failed to timely move the Breeze Aircraft or otherwise prevent the hazard.

53.     Unifi, acting as Breeze Airways' contract ground handler and agent, failed to inform CRAA, ANA, or Air Traffic Control that the Breeze Aircraft was positioned in the wrong RON Spot, and was positioned incorrectly in that Spot.

54.     Unifi, acting as Breeze Airways's contract ground handler and agent, was otherwise careless or negligent in allowing the tail section to encroach into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

55.     The foregoing events caused the tail section to encroach into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

56.     The foregoing acts or omissions by Breeze Airways, Unifi, and/or their employees or agents, created a foreseeable risk of collision, and the harm suffered by ANA was a direct and foreseeable consequence of such conduct.

57.     The breach of Breeze Airways' duty by Breeze Airways, Unifi, or their employees and/or agents was the direct and proximate cause of the collision between the ANA Aircraft and the Breeze Aircraft, resulting in substantial damage to the ANA Aircraft.

58.     As a result of the negligence described herein, Defendant-Counterclaimant ANA suffered damages in excess of $2,500,000, including but not limited to (1) the costs of temporary and permanent repairs to its aircraft; (2) expenses associated with the repositioning of the ANA

13

aircraft; (3) costs, losses, and expenses associated with the defense and indemnification of claims by passengers on board the Breeze Aircraft; and (4) other losses to be determined at trial.

WHEREFORE, having fully set forth its Counterclaim against Breeze Aviation Group, Inc., Defendant-Counterclaimant All Nippon Airways Co., Ltd., respectfully prays for the following relief:

1. Judgment against Breeze Aviation Group, Inc., in an amount to be determined at trial, plus pre-judgment and post-judgment interest as permitted by law.

2. The costs of suit incurred herein; and

3. Such other and further relief as the Court shall deem just and proper.

**AS AND FOR THIRD-PARTY PLAINTIFF
ALL NIPPON AIRWAYS CO., LTD.'S THIRD-PARTY COMPLAINT
AGAINST THIRD-PARTY DEFENDANT UNIFI AVIATION, LLC, AND
THIRD-PARTY DEFENDANT CHARLESTON REGIONAL AVIATION AUTHORITY**

Third-Party Plaintiff ALL NIPPON AIRWAYS CO., LTD. (hereinafter "ANA"), by and through its attorneys, Condon & Forsyth LLP and Deborah B. Barbier, LLC, complaining of Third-Party Defendant, Unifi Aviation, LLC, and Charleston Regional Airport Authority, alleges as follows:

1. Third-Party Plaintiff All Nippon Airways Co., Ltd. ("ANA"), is a corporation organized under the laws of Japan. ANA's principal place of business is located in Tokyo, Japan.

2. Third-Party Defendant Unifi Aviation, LLC ("Unifi"), is a limited liability company with a principal place of business in Atlanta, Georgia.

3. Third-Party Defendant Charleston Regional Aviation Authority ("CRAA"), is a public entity with its principal place of business at 5500 International Boulevard #101, North Charleston, South Carolina.

14

**JURISDICTION AND VENUE**

4.     This Court has jurisdiction over ANA's third-party claims under 28 U.S.C. § 1367(a) because they are so related to Plaintiff's claims that they form a part of the same case or controversy.

5.     Alternatively, this Court has jurisdiction over ANA's third-party claims pursuant to 28 U.S.C. § 1332(a)(2), in that this is a civil action between a citizen of a foreign state and citizens of a State, and the amount in controversy exceeds $75,000, exclusive of interest and costs. ANA is a corporation organized under the laws of Japan, Unifi is a citizen of the United States, and CRAA is a citizen of the United States.

6.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district. The incident giving rise to this action occurred at Charleston International Airport, located in North Charleston, South Carolina, within the District of South Carolina.

**STATEMENT OF FACTS**

7.     On July 18, 2025, an aircraft owned and/or operated by Breeze Aviation Group, Inc. ("Breeze Airways"), an Airbus A220-300 bearing registration number N247BZ ("the Breeze Aircraft"), was operating as flight MX 509 and landed at Charleston International Airport ("CHS").

8.     Third-party Defendant Unifi is Breeze's ground handler and agent at CHS.

9.     CRAA operates, manages, and supervises CHS, including the Remain Over Night ("RON") Ramp.

15

10.    After the Breeze Aircraft landed, Breeze Airways asked CRAA for permission for the Breeze Aircraft to park on the RON Ramp at CHS to refuel in anticipation of departing shortly thereafter.

11.    CRAA instructed Unifi to utilize RON Spot R1.

12.    RON Spot R1 is designated for A220-300 aircraft and is configured to accommodate an A220-300 aircraft.

13.    Aircraft that park in RON Spot R1 must back into the spot, tail section-first.

14.    However, Unifi employees and/or Breeze employees marshalled the Breeze Aircraft, nose-in, to RON Spot R6.

15.    RON Spot R6 is not designated for A220-300 aircraft and it is not configured to accommodate an A220-300 aircraft.

16.    RON Spot R6 is designated only for, and configured only to accommodate, Embraer aircraft types E45, E70, E90, and E95, and Bombardier aircraft types CRJ-200, CRJ-500, CRJ-700, and CRJ-900.

17.    When marshalling the Breeze Aircraft to RON Spot R6, Unifi stopped the Breeze Aircraft short of the R6 stop line.

18.    The Breeze Aircraft then parked at the location in which it stopped.

19.    Because the Breeze Aircraft was positioned in a space neither designated for nor configured to accommodate an A220-300 aircraft, the tail section of the Breeze Aircraft encroached into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

16

20. Because the Breeze Aircraft was positioned short of the R6 stop line, it further enroached into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

21. Unifi employees were aware that RON Spot R6 was not designated for A220-300 aircraft and was not configured for A220-300 aircraft.

22. Unifi employees were aware that Taxiway M was being actively used by other aircraft.

23. Unifi employees did not notify flight crews of other aircraft, airport officials, or Air Traffic Control that the Breeze Aircraft was encroaching into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

24. On July 18, 2025, ANA's aircraft, a Boeing 787-10 aircraft bearing registration number JA986A ("the ANA Aircraft"), was taxiing from the Boeing Delivery Center at Charleston International Airport to depart as ferry flight NH 9397 en route to Los Angeles.

25. At approximately 9:40 pm on July 18, 2025, the ANA Aircraft was taxiing on Taxiway M.

26. The flight crew of the ANA Aircraft were taxiing on Taxiway M pursuant to instructions issued by Air Traffic Control.

27. Taxiway M is designed to accommodate aircraft with a wingspan equal to or greater than that of the ANA Aircraft.

28. When aircraft with wingspans equal to or greater than that of the ANA aircraft taxi on Taxiway M, their wings will not make contact with aircraft that are properly positioned in RON Spots for which such aircraft are designated.

29.     While taxiing on Taxiway M, the ANA aircraft's left wing made contact with the tail section of the Breeze Aircraft.

30.     At the time of the collision, the Breeze Aircraft was positioned in the wrong RON Spot.

31.     At the time of the collision, the tail section of the Breeze Air aircraft was extending into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

32.     At the time of the collision, CRAA was in control of the assignment and management of ramp positions and the coordination of aircraft movements.

33.     At the time of the collision, CRAA was aware that the Breeze Aircraft was positioned in the wrong RON Spot and that its tail section extended into the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

34.     At no time prior to the collision did CRAA instruct the flight crew of the ANA Aircraft to stop or slow its taxi to prevent the collision with the improperly positioned Breeze Aircraft.

35.     At no time prior to the collision did CRAA inform air traffic controllers, ground controllers, or tower controllers that Taxiway M and the space adjacent to it were obstructed by another aircraft.

36.     At no time prior to the collision did CRAA inform air traffic controllers, ground controllers, or tower controllers that the Breeze Aircraft was encroaching into Taxiway M and the space adjacent to it.

37. At no time prior to the collision did CRAA inform air traffic controllers, ground controllers, or tower controllers that Taxiway M was not available for use by a Boeing 787 aircraft.

38. The collision was proximately caused by the Breeze Aircraft being positioned in the wrong RON Spot and the Breeze Aircraft being positioned incorrectly into the wrong RON Spot, which caused the tail of the Breeze Aircraft extending into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

39. The collision was proximately caused by CRAA (1) allowing the Breeze Aircraft to be positioned in the wrong RON Spot, and positioned incorrectly into the wrong RON Spot, which caused the tail of the Breeze Aircraft extending into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft; and (2) instructing the flight crew of the ANA Aircraft to commence or continue with its taxiing on Taxiway M despite the obstruction posed by the wrongly positioned Breeze Aircraft, and/or failing to instruct the flight crew of the ANA Aircraft to cease its taxiing in light of the obstruction posed by the wrongly positioned Breeze Aircraft.

40. The collision caused significant damage to the left wingtip, upper and lower winglet skin panels, and adjacent and surrounding structure of the ANA Aircraft.

41. The ANA Aircraft underwent required temporary repairs at CHS to enable a ferry flight to Victorville, California, where it would undergo permanent repairs.

42. The temporary repairs including removal of the damaged outboard wingtip, removal of the undamaged wingtip for flight symmetry, and securing of the wings for the ferry flight.

19

43.     The ANA Aircraft underwent permanent repairs, including replacement of the damaged wingtip and reinstallation of the undamaged wingtip.

44.     The total cost of the temporary and permanent repairs was approximately $2,530,000.

45.     ANA also sustained damages associated with the unanticipated need to reposition the ANA Aircraft, at a net cost to be determined at a later

46.     Passengers on board the Breeze Aircraft have asserted claims for damages against ANA and Breeze Airways.

47.     In the Complaint [D.E. 1], Breeze Airways seeks damages against ANA allegedly arising from the subject incident, including property damage, disruption of business operations, the incurrence of additional operational expenses, and the costs associated with the defense of passenger claims.

**FIRST THIRD-PARTY CLAIM**

**(Negligence – Unifi Aviation, LLC)**

48.     ANA realleges, reasserts, and repleads the allegations in paragraphs 1 through 47 above as if fully set forth herein.

49.     Unifi owed ANA a duty to exercise reasonable care in the parking, marshalling, and ground handling of aircraft at Charleston International Airport, including a duty to ensure that aircraft under their control were positioned safely and correctly, in accordance with airport designations, and did not create hazards to other aircraft operating on taxiways.

50.     Unifi's duty arises from (1) its role as an aircraft ground handler responsible for the safe positioning of aircraft on the ramp and taxiways at the airport; and (2) Unifi's role as Breeze Airways' agent and contract ground handler.

51.     Unifi, by and through its agents and/or employees, breached its duty by failing to position the Breeze Aircraft in RON Spot R1, the position it was assigned by CRAA.

52.     Unifi, by and through its agents and/or employees, breached its duty by improperly positioning the Breeze Aircraft in RON Spot R6, which was not designated or configured for an A220-300 aircraft.

53.     Unifi, by and through its agents and/or employees, breached its duty by stopping the Breeze Aircraft short of the designated R6 stop line.

54.     Unifi, by and through its agents and/or employees, breached its duty by failing to timely move the Breeze Aircraft or otherwise prevent the hazard.

55.     Unifi, by and through its agents and/or employees, breached its duty by failing to inform CRAA, ANA, or Air Traffic Control that the Breeze Aircraft was positioned in the wrong RON Spot, and was positioned incorrectly in that spot.

56.     Unifi, by and through its agents and/or employees, was otherwise careless or negligent in allowing the tail section to encroach into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingpsan as the ANA Aircraft.

57.     The foregoing events caused the tail section to encroach into Taxiway M and the space adjacent to Taxiway M meant to accommodate the wings of taxiing aircraft of the same or greater wingspan as the ANA Aircraft.

58.     The foregoing acts or omissions by Unifi created a foreseeable risk of collision, and the harm suffered by ANA was a direct and foreseeable consequence of such conduct.

59. The breach of Unifi's duty was the direct and proximate cause of the collision between the ANA Aircraft and the Breeze Aircraft, resulting in substantial damage to the ANA Aircraft.

60. As a result of the negligence described herein, Third-Party Plaintiff ANA suffered damages in excess of $2,500,000, including but not limited to (1) the costs of temporary and permanent repairs to its aircraft; (2) expenses associated with the repositioning of the ANA Aircraft; (3) costs, losses, and expenses associated with the defense and indemnification of claims by passengers on board the Breeze Aircraft; and (4) other losses to be determined at trial.

## SECOND THIRD-PARTY CLAIM

### (Indemnification – Unifi Aviation, LLC)

61. ANA realleges, reasserts, and repleads the allegations in paragraphs 1 through 60 above as if fully set forth herein.

62. In the Complaint, Breeze Airways claims that ANA is liable to the plaintiff for certain injuries alleged to have arisen from acts of ANA, which liability is specifically denied.

63. The alleged damages complained of by Breeze Airways were caused solely by reason of the negligence or culpable conduct of Unifi, without any negligence or culpable conduct on the part of ANA contributing thereto.

64. If Breeze Airways recovers judgment against ANA for the damages alleged in the Complaint, such liability will have been brought about or caused solely by the careless, negligent, or culpable acts or omissions of Unifi, its agents, servants, or employees, and ANA is, therefore, entitled to full indemnity from Unifi.

65. By reason of the foregoing, Third-Party Plaintiff ANA seeks indemnification from Unifi in the amount of any judgment that Breeze Airways obtains against ANA, in an amount

22

equal to the total sum of any such judgment, together with attorneys' fees, costs, and disbursements incurred in defending the action.

## THIRD THIRD-PARTY CLAIM

### (Contribution – Unifi Aviation, LLC)

66.  ANA realleges, reasserts, and repleads the allegations in paragraphs 1 through 65 above as if fully set forth herein.

67.  In the Complaint, Breeze Airways claims that ANA is liable to the plaintiff for certain injuries alleged to have arisen from acts of ANA, which liability is specifically denied.

68.  The alleged damages complained of by Breeze Airways were caused, in substantial part, by reason of the negligence or culpable conduct of Unifi.

69.  If Breeze Airways recovers judgment against ANA for the damage alleged in the Complaint, such liability will have been brought about and caused, in substantial part, by the careless, negligent, or culpable acts or omissions of Unifi, its agents, servants, or employees, and ANA is, therefore, entitled to contribution from Unifi in the amount of its share of culpable conduct as determined by the trier of fact.

70.  In the event judgment is entered in favor of Breeze Airways and against ANA, ANA demands that it have judgment over and against Unifi in accordance with the Third-Party claims asserted herein, together with attorneys' fees, costs, and disbursements.

## FOURTH THIRD-PARTY CLAIM

### (Negligence – Charleston Regional Airport Authority)

71.  ANA realleges, reasserts, and repleads the allegations in paragraphs 1 through 70 above as if fully set forth herein.

72.    CRAA owed ANA a duty of care to operate, manage, and supervise CHS, including the RON ramp and taxiways, in a reasonably safe manner for all aircraft and operators using the facility.

73.    CRAA's duty to ANA included ensuring proper assignment and use of ramp positions, safe coordination of aircraft movements, and prompt response to operational hazards.

74.    CRAA's duty to ANA arises from Defendant's role as the airport operator and from the foreseeability that improper management could result in property damage or injury to aircraft operators such as ANA.

75.    CRAA, by and through its agents and/or employees, breached its duty of care to ANA by failing to ensure that the Breeze Aircraft was parked correctly in the assigned position.

76.    CRAA, by and through its agents and/or employees, breached its duty of care to ANA by failing to adequately supervise or coordinate the repositioning of the Breeze Aircraft.

77.    CRAA, by and through its agents and/or employees, breached its duty of care to ANA by failing to notify the flight crew of the ANA Aircraft that Taxiway M and the space agent to it were obstructed by the Breeze Aircraft.

78.    CRAA, by and through its agents and/or employees, breached its duty of care to ANA by failing to instruct the flight crew of the ANA Aircraft to stop or slow its taxi to prevent the collision with the improperly positioned Breeze Aircraft.

79.    CRAA, by and through its agents and/or employees, breached its duty of care to ANA by failing to prevent the ANA Aircraft from taxiing into a position where it could and did make physical contact with the Breeze Aircraft.

80.    CRAA, by and through its agents and/or employees, breached its duty of care to ANA by failing to instruct the flight crew of the ANA Aircraft to stop or slow its taxi to prevent the collision with the improperly positioned Breeze Aircraft.

81.    CRAA, by and through its agents and/or employees, breached its duty of care to ANA by failing to inform air traffic controllers, ground controllers, or tower controllers that Taxiway M and the space adjacent to it were obstructed by the improperly positioned Breeze Aircraft.

82.    CRAA, by and through its agents and/or employees, breached its duty of care to ANA by failing to inform air traffic controllers, ground controllers, or tower controllers that the Breeze Aircraft was encroaching into Taxiway M and the space adjacent to it.

83.    CRAA, by and through its agents and/or employees, breached its duty of care to ANA by failing to inform air traffic controllers, ground controllers, or tower controllers that Taxiway M was not available for use by a Boeing 787 aircraft because of the improperly positioned Breeze Aircraft.

84.    The foregoing acts or omissions by CRAA created a foreseeable risk of collision, and the harm suffered by ANA was a direct and foreseeable consequence of such conduct.

85.    CRAA's beach of duty was the proximate and actual cause of the collision between the ANA Aircraft and the Breeze Aircraft, resulting in damage to the ANA aircraft and related losses.

86.    As a result of the negligence described herein, ANA suffered damages in excess of $2,500,000, including but not limited to (1) the costs of temporary and permanent repairs to its aircraft; (2) expenses with the repositioning of the ANA Aircraft; (3) costs, losses, and expenses

associated with the defense and indemnification of claims by passengers on board the Breeze Aircraft; and (4) other losses to be determined at trial.

## FIFTH THIRD-PARTY CLAIM

### (Indemnification – Charleston Regional Airport Authority)

87.     ANA realleges, reasserts, and repleads the allegations in paragraphs 1 through 86 above as if fully set forth herein.

88.     In the Complaint, Breeze Airways claims that ANA is liable to the plaintiff for certain injuries alleged to have arisen from acts of ANA, which liability is specifically denied.

89.     The alleged damages complained of by Breeze Airways were caused solely by reason of the negligence or culpable conduct of CRAA, without any negligence or culpable conduct on the part of ANA contributing thereto.

90.     If Breeze Airways recovers judgment against ANA for the damages alleged in the Complaint, such liability will have been brought about or caused solely by the careless, negligent, or culpable acts or omissions of CRAA, its agents, servants, or employees, and ANA is, therefore, entitled to full indemnity from CRAA.

91.     By reason of the foregoing, Third-Party Plaintiff ANA seeks indemnification from CRAA in the amount of any judgment that Breeze Airways obtains against ANA, in an amount equal to the total sum of any such judgment, together with attorneys' fees, costs, and disbursements incurred in defending the action.

## SIXTH THIRD-PARTY CLAIM

### (Contribution – Charleston Regional Airport Authority)

92.     ANA realleges, reasserts, and repleads the allegations in paragraphs 1 through 91 above as if fully set forth herein.

93.    In the Complaint, Breeze Airways claims that ANA is liable to the plaintiff for certain injuries alleged to have arisen from acts of ANA, which liability is specifically denied.

94.    The alleged damages complained of by Breeze Airways were caused, in substantial part, by reason of the negligence or culpable conduct of CRAA.

95.    If Breeze Airways recovers judgment against ANA for the damage alleged in the Complaint, such liability will have been brought about and caused, in substantial part, by the careless, negligent, or culpable acts or omissions of CRAA, its agents, servants, or employees, and ANA is, therefore, entitled to contribution from CRAA in the amount of its share of culpable conduct as determined by the trier of fact.

96.    In the event judgment is entered in favor of Breeze Airways and against ANA, ANA demands that it have judgment over and against CRAA in accordance with the Third-Party claims asserted herein, together with attorneys' fees, costs, and disbursements.

WHEREFORE, having fully set forth its Third-Party Claims against Third-Party Defendant Breeze Aviation Group, Inc., and Third-Party Defendant Charleston Regional Aviation Authority, Third-Party Plaintiff All Nippon Airways Co., Ltd., respectfully prays for the following relief:

1. Judgment against Unifi Aviation, LLC, and Charleston Regional Airport Authority in an amount to be determined at trial, plus pre-judgment and post-judgment interest as permitted by law.

2. The costs of suit incurred herein; and

3. Such other and further relief as the Court shall deem just and proper.

27

Respectfully submitted,

Deborah B. Barbier, LLC

By: /s/ Deborah B. Barbier
Deborah B. Barbier, Esq. (#6693)
Deborah B. Barbier, LLC
1811 Pickens Street
Columbia, South Carolina 29201
Tel: (803) 730-6290
Email:dbb@deborahbarbier.com

- and -

CONDON & FORSYTH LLP
Bartholomew J. Banino, Esq.
(Pro Hac Vice Motion to be submitted)
Marissa N. Lefland, Esq.
(Pro Hac Vice Motion to be submitted)
7 Times Square Tower
New York, New York 10036
Tel: (212) 490-9100
Fax: (212) 370-4453
Email: bbanino@condonlaw.com
        mlefland@condonlaw.com

Attorneys for Defendant-Counterplaintiff and Third-Party Plaintiff
*ALL NIPPON AIRWAYS CO., LTD.*

Dated: Columbia, South Carolina
        April 30, 2026

28